# In the United States Court of Federal Claims

BID PROTEST
Nos. 17-80C and 17-83C
Filed Under Seal: June 23, 2017
Reissued for Publication: July 12, 2017[*]

| | |
|---|---|
| QTC MEDICAL SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) Post-Award Bid Protest; Judgment |
| Defendant. | ) Upon the Administrative Record, RCFC |
| | ) 52.1; Permanent Injunction; |
| v. | ) Supplementing the Administrative |
| | ) Record. |
| LOGISTICS HEALTH, INC., MEDICAL | ) |
| SUPPORT LOS ANGELES, and | ) |
| VETFED RESOURCES, INC., | ) |
| | ) |
| Defendant-Intervenors. | ) |
| | ) |

| | |
|---|---|
| VETERANS EVALUATION | ) |
| SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

---

[*] This Memorandum Opinion and Order was originally filed under seal on June 23, 2017 (QTC docket entry no. 64, VES docket entry no. 73). The parties were given an opportunity to advise the Court, by July 24, 2017, of their views with respect to what information, if any, should be redacted. On June 28, 2017, the parties informed the Court that there was no proprietary or source selection information contained in the Court's opinion and that no redactions were necessary or appropriate (QTC docket entry no. 66; VES docket entry no. 75). And so, the Court is reissuing its Memorandum Opinion and Order dated June 23, 2017, without redactions.



       )
v.       )
       )
LOGISTICS HEALTH, INC., MEDICAL   )
SUPPORT LOS ANGELES, QTC   )
MEDICAL SERVICES, INC., and   )
VETFED RESOURCES, INC.,   )
       )
Defendant-Intervenors.   )

*Marcia G. Madsen*, Counsel of Record, Mayer Brown, LLP, Washington, DC, *David F. Dowd*, Counsel, *Luke Levasseur*, Counsel, *Roger V. Abbott*, Counsel, Mayer Brown, LLP, Washington DC, for plaintiff and defendant-intervenor, QTC Medical Services, Inc.

*Stuart W. Turner*, Counsel of Record, Arnold & Porter Kaye Scholer LLP, Washington, DC, for plaintiff, Veterans Evaluation Services, Inc.

*Elizabeth Anne Speck*, Senior Trial Attorney, *Robert E. Kirschman, Jr.,* Director, *Douglas K. Mickle*, Assistant Director, *Chad A. Readler*, Acting Assistant Attorney General, *Margaret J. Jantzen*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington DC, *Lynn T. Burleson*, Attorney, United States Department of Veterans Affairs, Washington, DC, *Frank DiNicola*, Protest Attorney, Office of General Counsel, United States Department of Veterans Affairs, Eatontown, NJ, for defendant.

*Jason A. Carey*, Attorney of Record, Covington & Burling, LLP, Washington, DC, *J. Hunter Bennett*, Of Counsel, *Julia A.C. Lippman*, Of Counsel, *John W. Sorrenti*, Of Counsel, *Kevin M. Barnett*, Of Counsel, Covington & Burling, LLP, Washington, DC, for defendant-intervenors, Logistics Health, Inc. and Medical Support Los Angeles.

*Richard O. Wolf*, Counsel of Record, *Robert M. Moore*, Of Counsel, *Casey J. McKinnon*, Of Counsel, Moore & Lee, LLP, McLean, VA, for defendant-intervenor, VetFed Resources, Inc.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.   INTRODUCTION

In these related, post-award bid protest matters, plaintiffs, QTC Medical Services, Inc. ("QTC") and Veterans Evaluation Services, Inc. ("VES"), seek to set aside the Department of Veterans Affairs' ("VA") award decisions with respect to several indefinite delivery/indefinite quantity ("IDIQ") contracts to provide medical disability examinations ("MDEs") throughout the United States.  Plaintiffs have moved for judgment upon the administrative record, pursuant to

2

Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC").  The government and the defendant-intervenors in these matters—Logistics Health, Inc. ("LHI"), Medical Support Los Angeles ("MSLA"), VetFed Resources, Inc. ("VetFed"), and QTC—have also moved for judgment upon the administrative record, pursuant to RCFC 52.1.  In addition, the government has moved to strike certain documents that QTC has submitted in support of its motion for judgment upon the administrative record.

For the reasons discussed below, the Court **DENIES** plaintiffs' motions for judgment upon the administrative record; **GRANTS** the government's consolidated cross-motion for judgment upon the administrative record; **GRANTS** the defendant-intervenors' motions for judgment upon the administrative record; **GRANTS** the government's motion to strike; and **DENIES**, as moot, plaintiffs' motion for clarification.

## II.      FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.      Factual Background

In these related, post-award bid protest matters, plaintiffs, QTC and VES, challenge the VA's decisions to award several indefinite delivery/indefinite quantity contracts to provide MDEs to veterans throughout the United States.  *See generally* QTC Compl.; VES Am. Compl. In their respective motions for judgment upon the administrative record, plaintiffs assert six challenges to the VA's award decisions, namely, plaintiffs allege that: (1) the VA conducted misleading and unequal discussions regarding pricing; (2) the VA failed to exclude non-competitive offerors' high pricing from its benchmark calculations; and (3) the VA violated the terms of the solicitation by awarding contracts in the same district to LHI and MSLA, after these two companies merged and came to share a corporate parent.  QTC Compl ¶¶ 4-9, 46-90; VES Am. Compl. ¶¶ 5, 7-8, 10, 99-104, 110-14, 120-24.

In addition, QTC alleges that the VA deprived QTC of meaningful discussions by telling QTC that the subject procurement had been overcome by events.  QTC Compl. ¶¶ 9, 91-94. VES also alleges that: (1) the VA's price evaluation was flawed, because the VA only considered

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the fourth corrected administrative record ("AR"); QTC's complaint ("QTC's Compl."); and VES's amended complaint ("VES Am. Compl.").  Except where otherwise noted, all facts recited herein are undisputed.

cost during the base year of the contracts, rather than for all option years; and (2) the VA failed to document its best value determinations. VES Am. Compl. ¶¶ 6, 9, 105-09, 115-19. As relief, plaintiffs request that, among other things, the Court set aside the VA's award decisions and direct the VA to conduct discussions and re-evaluate responsive proposals. QTC Compl. at Prayer for Relief; VES Am. Compl. ¶ 124.

### 1.    The Initial RFP

On September 25, 2015, the VA issued the Solicitation No. VA119A-15-R-0150, requesting proposals to provide MDEs for veterans at locations throughout the United States ("RFP"). AR at 18816-17. The RFP contemplates the award of at least one, and up to two, IDIQ contracts in seven districts for this purpose. *Id.* at 18932. Each of these contracts would have a 12-month base period, and four 12-month option periods. *Id.* at 18816.

The RFP provides that contract awards would be based upon a best-value, tradeoff basis, considering price and three other non-price factors in the following descending order of importance: (1) technical approach; (2) past performance; and (3) socioeconomic considerations. *Id.* at 18933. The RFP further provides that, in combination, the non-price factors are significantly more important than price. *Id.*

On November 4, 2015, ER Williams, Financial Designs, MCN, MediNet, MRG Exams, Spectrum, Sterling, LHI, MSLA, QTC, VES, and VetFed submitted proposals in response to the RFP. *Id.* at 31752. Following the evaluation of the responsive proposals, the VA awarded contracts to VES, VetFed, and QTC on March 28, 2016. *Id.* at 14643-45.

### 2.    First GAO Protest

Following the award of these contracts, VES, LHI, and MSLA filed protests before the Government Accountability Office ("GAO"), and the GAO sustained those protests in part. *Id.* at 14645, 14663. Specifically relevant here, the GAO concluded in those protests that the VA's price evaluation for the RFP was unreasonable, because the VA did not consider any estimate of the various quantities that would be ordered under each contract line item ("CLIN") and subcontract line item ("subCLIN"). *Id.* at 14657-59. And so, the GAO recommended that the VA analyze the comparative costs by using a sample task order, or other hypothetical pricing scenarios. *Id.*

The GAO also concluded that the VA had conducted misleading discussions regarding the evaluation of price reasonableness, because the VA calculated the benchmark for ascertaining whether offerors' prices were reasonable after the initial proposals were submitted and, subsequently, calculated another benchmark for ascertaining whether offerors' prices were reasonable after final revised proposals had been submitted. *Id.* at 14659-61. And so, the GAO further concluded that the VA's "moving benchmark" violated the Federal Acquisition Regulation ("FAR"). *Id.*

### 3.    Revised RFP And Amendment 8

The VA took corrective action to remedy the concerns identified by the GAO in the aforementioned protests by issuing Amendment 8 to the RFP. *Id.* at 16213. Amendment 8 provides for the evaluation of CLIN and subCLIN prices using a sample task order. *Id.* at 16214, 16225-34, 22907-11. The VA informed the offerors that the quantities set forth in this sample task order "will be used for price evaluation purposes only and are representative of the volume of exams that might be expected for any of the Districts and periods of performance*." Id.* at 17246.

In addition, Amendment 8 provides that the VA would evaluate CLIN and subCLIN unit prices and the sample task order price to determine whether offerors' prices were fair and reasonable, and that the price reasonableness evaluation would be conducted using price analysis techniques prescribed in FAR 5.404-1(b)*. Id.* at 16229. Amendment 8 also provides that proposed pricing would be evaluated in accordance with FAR 15.404-1(g), to ensure balance. *Id.* Finally, Amendment 8 provides that offerors may submit revised proposals that are limited to the price and past performance elements of the proposal. *Id.* at 16213-14.

On July 28, 2016, ER Williams, MCN, MediNet, Spectrum, LHI, MSLA, QTC, VES, and VetFed submitted revised proposals with respect to price and past performance in response to the RFP. *Id*. at 31758. After receiving and evaluating these revised proposals, the VA engaged in discussions with the offerors and, at the conclusion of those discussions, the VA requested and evaluated final proposal revisions*. Id.* at 23158-63, 31760.

With respect to the VA's evaluation process, the VA evaluated the final proposal revisions, assigned ratings under the non-price evaluation factors, and also determined each offeror's evaluated price based upon the sample task order. *Id*. at 31761, 31799. The VA also

conducted a trade-off analysis that involved identifying the two "apparent best value [o]fferor(s)," based upon the RFP's evaluation factors and performing tradeoffs between price and non-price factors. *Id.* at 31834. After completing this analysis, the VA awarded contracts to the following offerors in each district:

| Best Value Order | Offeror | Technical Approach | Past Performance | Socioeconomic | Price |
|---|---|---|---|---|---|
| District 1 | | | | | |
| 1 | LHI | Excellent | Excellent | Partial | $26,396,312.29 |
| 2 | MSLA | Excellent | Good | Partial | $30,173,456.00 |
| District 2 | | | | | |
| 1 | LHI | Excellent | Excellent | Partial | $25,681,896.49 |
| 2 | MSLA | Excellent | Good | Partial | $28,922,977.00 |
| District 3 | | | | | |
| 1 | LHI | Excellent | Excellent | Partial | $28,294,442.61 |
| 2 | QTC | Excellent | Excellent | Partial | $33,936,638.30 |
| District 4 | | | | | |
| 1 | LHI | Excellent | Excellent | Partial | $28,136,815.76 |
| 2 | MSLA | Excellent | Good | Partial | $29,578,153.00 |
| District 5 | | | | | |
| 1 | MSLA | Excellent | Good | Partial | $28,922,977.00 |
| 2 | VetFed | Excellent | Good | Partial | $30,708,333.07 |

*Id.* at 31835, 31851, 31867, 31879, 31892.

### 4.    Second GAO Protest

After the VA's second award decisions, VES, QTC, and VetFed filed separate protests before the GAO. *Id.* at 23084. On January 5, 2017, the GAO issued a decision addressing the claims in all three protests and concluding that many of the protestors' claims were untimely. *Id.* at 23093, 23095, 23100. The GAO also concluded that the protestors' remaining claims regarding misleading discussions, the corporate affiliation between LHI and MSLA, and the VA's best value selections were without merit. *Id.* at 23097, 23101. And so, the GAO dismissed-in-part and denied-in-part the protests on January 5, 2017. *Id.* at 23104-06.

On March 21, 2017, QTC and VES commenced these bid protest matters. *See generally* QTC Compl.; VES Am. Compl.

### B.      Procedural History

On January 17, 2017, QTC filed its complaint in *QTC v. United States*, No. 17-80C, as well as a motion for a protective order, which the Court granted on January 24, 2017. *See generally* QTC Compl; QTC Mot. for Prot. Order; Order dated January 24, 2017. LHI, MSLA, and VetFed filed motions to intervene in the *QTC* matter on January 18 and January 19, 2017, respectively. *See generally* LHI and MSLA Mot. to Intervene; VetFed Mot. to Intervene. On January 24, 2017, the Court granted those motions. Order dated January 24, 2017.

On January 18, 2017, VES filed its complaint in *VES v. United States*, No. 17-83C, which was subsequently amended on March 21, 2017. *See generally* VES Compl.; VES Am. Compl. On January 18, 2017, VES also filed a motion for a protective order, which the Court granted on January 24, 2017. *See generally* VES Mot. for Prot. Order; Order dated January 24, 2017. On January 19, 2017, LHI, MSLA, and VetFed filed motions to intervene in the *VES* matter, which the Court granted on January 24, 2017. *See generally* LHI and MSLA Mot. to Intervene; VetFed Mot. to Intervene; Order dated January 24, 2017. During an initial telephonic status conference held with the parties on January 24, 2017, QTC also orally moved to intervene in the *VES* matter. The Court granted QTC's motion in an Order dated January 24, 2017. *See generally* Order dated January 24, 2017.

On March 3, 2017, the government filed a consolidated administrative record in both matters. Subsequently, the government filed a consolidated, corrected administrative record on March 10, 2017, March 13, 2017, and March 17, 2017. On March 24, 2017, the government filed a fourth and final consolidated, corrected administrative record. *See generally* AR.

On March 24, 2017, QTC and VES filed motions for judgment upon the administrative record. *See generally* QTC Mot.; VES Mot. On April 14, 2017, the government, LHI, MSLA, VetFed, and QTC filed cross-motions for judgment upon the administrative record and responses to plaintiffs' motions for judgment upon the administrative record. *See generally* Def. Mot.; LHI and MSLA Mot.; VetFed Mot.; QTC Def.-Int. Mot. On April 14, 2017, the government also filed a motion to strike certain documents filed in support of QTC's motion for judgment on the administrative record. *See generally* Def. Mot. to Strike.

On April 28, 2017, plaintiffs filed responses to the government's and defendant-intervenors' cross-motions for judgment upon the administrative record and replies in support of their motions for judgment upon the administrative record. *See generally* QTC Reply; VES

Reply.  On April 28, 2017, QTC also filed a response in opposition to the government's motion to strike.  *See generally* Pl. Opp.

On May 12, 2017, the government, LHI, MSLA, and QTC filed replies in support of their cross-motions for judgment upon the administrative record.  *See generally* Def. Reply; LHI and MSLA Reply; QTC Def.-Int. Reply.  On May 12, 2017, the government filed a reply in support of its motion to strike.  *See generally* Def. Mot. to Strike Reply.

On May 24, 2017, plaintiffs filed motions for clarification.  *See generally* QTC Mot. for Clarification; VES Mot. for Clarification.

These matters having been fully briefed, the Court addresses the pending motions.

## III.   LEGAL STANDARDS

### A.   Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).  This Court reviews agency actions in bid protest matters under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act).  And so, under the APA's standard, an award may be set aside if, "'(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'"  *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  In this regard, the Federal Circuit has explained that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis.  When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id*. at 1351 (internal citations omitted).

In reviewing an agency's procurement decision, the Court also recognizes that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted).  In addition, the Court should not substitute its judgment for that of the agency.  *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997).  And so, "'[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law.'" *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003) (quoting *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003)).

This standard "is highly deferential."  *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  As long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . ."  *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted).  But, if "the agency entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency," then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious."  *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

## B.    Judgment Upon The Administrative Record

Generally, Rule 52.1 limits this Court's review of an agency's procurement decision to the administrative record.  RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("[T]he focal point for judicial review should be the administrative record already in existence.").  And so, unlike a summary judgment motion brought pursuant to Rule 56, "the existence of genuine issues of material fact does not preclude judgment upon the administrative record" under Rule 52.1.  *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011) (citations omitted); RCFC 56.  Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

### C.       Supplementing The Administrative Record

The United States Court of Appeals for the Federal Circuit held in *Axiom Resource Management*, that the "parties' ability to supplement the administrative record is limited" and that the administrative record should only be supplemented "if the existing record is insufficient to permit meaningful review consistent with the APA." 564 F.3d at 1379-81; *see also Caddell Constr. Co., Inc. v. United States*, 111 Fed. Cl. 49, 93 (2013). In *Axiom*, the Federal Circuit relied upon the Supreme Court's decision in *Camp v. Pitts*, which states that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." 564 F.3d at 1379 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). This focus is maintained in order to prevent courts from using new evidence to "convert the arbitrary and capricious standard into effectively de novo review." *L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 671 (2009) (citations omitted).

This Court has interpreted the Federal Circuit's directive in *Axiom* to mean that supplementation of the administrative record is permitted to correct mistakes and fill gaps, but is not permitted when the documents proffered are unnecessary for an effective review of the government's procurement decision. *L-3 Commc'ns EOTech*, 87 Fed. Cl. at 672. And so, this Court has precluded supplementation of the administrative record with declarations that contain "post-hoc contentions of fact and argument." *Id.*

### D.       Injunctive Relief

Lastly, under the Court's bid protest jurisdiction the Court "may award any relief [that it] considers proper, including declaratory and injunctive relief . . . ." 28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has succeeded upon the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska,* 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."));

*see also Centech Grp., Inc.*, 554 F.3d at 1037.  In this regard, the Federal Circuit has stated that a plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for permanent injunctive relief.  *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd*., 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief).  Similarly, this Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief."  *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)).  While success upon the merits is necessary, however, it is not sufficient alone for a plaintiff to establish that it is entitled to injunctive relief.  *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) ("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted).  In this regard, the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).

## IV.   LEGAL ANALYSIS

Plaintiffs have moved for judgment upon the administrative record, pursuant to RCFC 52.1, upon the ground that the VA's award decisions in these matters were arbitrary, capricious, and not in accordance with the terms of the RFP and applicable law.  *See generally* QTC Mot.; VES Mot.  The government and the defendant-intervenors—LHI, MSLA, VetFed, and QTC[2]— have also moved for judgment upon the administrative record, upon the ground that the VA's award decisions were reasonable and in accordance with the plain terms of the RFP.  *See generally* Def. Mot.; LHI and MSLA Mot.; VetFed Mot.; QTC Def.-Int. Mot.  In addition, the

---

[2] QTC's argument in this regard is limited to VES's challenge to the VA's use of a sample task order that took into account base year pricing to evaluate price reasonableness.  *See generally* QTC Def.-Int. Mot.

government has moved to strike certain documents that QTC has filed in support of its motion for judgment upon the administrative record.

For following reasons, the Court **DENIES** plaintiffs' motions for judgment upon the administrative record; **GRANTS** the government's consolidated cross-motion for judgment upon the administrative record; **GRANTS** the defendant-intervenors' motions for judgment upon the administrative record; and **GRANTS** the government's motion to strike.

### A.      QTC's Effort To Supplement The Administrative Record Is Unwarranted

As an initial matter, the Court must grant the government's motion to strike the declaration of Chelsea Taylor Cullum and related calculations, which QTC has filed in support of its motion for judgment upon the administrative record, because these documents do not correct mistakes or fill gaps in the existing administrative record. *See generally* Def. Mot. to Strike. The government has moved to strike the Cullum declaration and related calculations upon the ground that these documents have been created for this litigation and serve only to second-guess the VA's decision-making. *Id*. at 2. For the reasons discussed below, the Court agrees.

The Federal Circuit held in *Axiom Resource Management* that a "part[y's] ability to supplement the administrative record is limited," and that the administrative record should only be supplemented "if the existing record is insufficient to permit meaningful review consistent with the APA." 564 F.3d at 1379-81. Given this, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id.* at 1379 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). And so, supplementation of the administrative record is permitted to correct mistakes and fill gaps, but is not permitted when the documents proffered are declarations that contain "post-hoc contentions of fact and argument." *L-3 Commc'ns EOTech*, 87 Fed. Cl. at 672.

Supplementation of the extensive administrative record in this matter is inappropriate, because the documents proffered by QTC were not before the VA at the time of the agency's decision-making and serve only to support QTC's legal arguments in this litigation. The Cullum declaration and related calculations do not explain evidence contained in the administrative record, as QTC argues in its opposition to the government's motion to strike. Pl. Opp. at 1; *see*

*also* Def. Mot. to Strike Reply at 2. Rather, these documents serve to support QTC's legal arguments in this case. Given this, supplementation of the administrative record with these documents is inappropriate and unnecessary for meaningful judicial review. And so, the Court grants the government's motion to strike these materials.

### B.      Several Of Plaintiffs' Claims Are Untimely

With regards to the merits of plaintiffs' claims, the administrative record shows that several of plaintiffs' claims are untimely. It is well-established that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection afterwards . . . in [an] action in the Court of Federal Claims." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1315 (Fed. Cir. 2007); *see also Bannum, Inc. v. United States*, 779 F.3d 1376, 1380-81 (Fed. Cir. 2015) (A bidder that does not demonstrate that it objected to the terms of a solicitation "'prior to the close of the bidding process,' . . . 'waives its ability to raise the same objection afterwards in a 1491(b) action.'") (citations omitted); *Triax Pac., Inc. v. West*, 130 F.3d 1469, 1475 (Fed. Cir. 1997) ("The existence of a patent ambiguity in a government contract 'raises the duty of inquiry, regardless of the reasonableness of the contractor's interpretation,' [and] requires the contractor to inquire . . . as to the true meaning of the contract before submitting a bid.")(quoting *Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed.Cir. 1985) (citing *Newsom v. United States*, 676 F.2d 647, 649 (Ct. Cl. 1982); *NVE, Inc. v. United States*, 121 Fed. Cl. 169, 179 (2015) ("A party who participates in a second round of proposal submissions rather than protesting cannot challenge an agency's decision to reopen discussions or reevaluate proposals."). And so, plaintiffs may not pursue their bid protest claims in this litigation, if their claims are based upon a patent error that should have been addressed prior to the submission of final proposal revisions. *Id.*

### 1.      Plaintiffs Have Waived Their Challenge To The Calculation Of The Price Benchmarks For The RFP

The administrative record shows that plaintiffs have waived their challenge to the VA's calculation of the price benchmarks for the RFP, because plaintiffs had notice of the VA's methodology for determining the price benchmarks well before submitting their final proposal revisions. In their motions for judgment upon the administrative record, QTC and VES allege

that the VA's methodology for determining the benchmarks to evaluate price was unreasonable, because the evaluation included pricing from offerors that proposed allegedly "high and non-competitive" prices.  QTC Mot. at 13-25; VES Mot. at 17-19; *see also* QTC Compl. ¶¶ 4-7, 46-74; VES Am. Compl. ¶¶ 10, 120-24.  The record evidence shows, however, that plaintiffs were aware that the VA would consider the prices proposed by all offerors to determine the benchmarks for price reasonableness long before plaintiffs submitted their final proposal revisions.  AR at 16215-16, 31571, 31753-55, 31799-800.

In this regard, the administrative record shows that the contracting officer explained that the VA would include the pricing from all offerors to determine the benchmark for price reasonableness, almost a month before final proposal revisions were due.  *Id.* at 16214-16, 17256-395, 31753-55, 31799-800.  Plaintiffs' argument that their claim is, nonetheless, timely, because QTC and VES did not know that other offerors would submit high and non-competitive price proposals until after award of the subject contracts, is also unavailing.  QTC Reply at 3; VES Reply at 10.  As discussed above, the record evidence shows that the VA informed plaintiffs that the agency would include pricing from all offerors to determine the benchmarks before final proposal revisions were due.  And so, plaintiffs knew that the VA's methodology for determining the price benchmarks could potentially skew the median for the benchmarks, if very high, or very low, prices were proposed.  AR at 16215-16, 31571, 31753-55, 31799-800.

Plaintiffs do not dispute that they did not protest the VA's methodology for determining the price benchmarks before submitting their final revised proposals.  QTC Reply at 3; VES Reply at 10.  And so, plaintiffs' claim challenging the VA's methodology for determining the price benchmarks is untimely and has been waived.  *See Blue & Gold Fleet, L.P.*, 492 F.3d at 1315.

### 2.   Plaintiffs Have Also Waived Their Claim That The VA Engaged In Misleading Discussions About Price

Plaintiffs' claim that the VA engaged in misleading discussions about price is also untimely.  QTC Compl. ¶¶ 9, 84-90; VES Am. Compl. ¶¶ 5, 99-104.  While there is no dispute that the VA engaged in discussions with plaintiffs about low prices prior to the submission of final proposal revisions, the administrative record shows that these discussions occurred due to the VA's concerns that low prices could indicate that offerors had improperly changed their technical approach, in violation of the terms of the RFP.  AR at 19013, 19033, 31759-80.

Specifically, the record evidence shows that in a letter to offerors, dated August 25, 2016, the VA states that:

> For each CLIN that is highlighted in BLUE, your proposed price is significantly less than what was originally quoted prior to Amendments A00008 and A00009, and/or is at least 30% below the low benchmark price . . . *Since no revisions to Technical Proposals were requested or allowed, we assume that any significant price reduction is not the result of a change in your proposed technical approach.* In order to clarify that your company, in fact, intended such a significant price reduction, please confirm that your most recent proposed pricing for these CLINs is correct.

*Id.* at 19013, 19033 (emphasis supplied). And so, the administrative record shows that the VA indicated that the agency was concerned about impermissible changes to offerors' technical approach at the time that these discussions occurred. *Id.* at 19010-14, 19030-35, 16017-23, 16148-55, 17256-395, 23158, 23162-63, 31759-60.

There is also no evidence in the administrative record to indicate that the VA told QTC or VES that these offerors could not reduce their respective prices, or that their respective prices were unrealistically low.[3] *Id.* The scope of the VA's discussions with plaintiffs are within the agency's discretion. *Raytheon Co. v. United States*, 121 Fed. Cl. 135, 164 (2015). And here, the administrative record shows that the VA reasonably exercised its discretion by engaging in discussions with plaintiffs to ensure that there were not impermissible changes to plaintiffs' proposed technical approach.[4] *Id.*

---

[3] The sealed version of this opinion, issued on June 23, 2017, inadvertently stated that the administrative record did not indicate that the VA told QTC or VES "that their respective prices were unrealistically high." The Court corrects this error to be consistent with the Court's oral ruling delivered on June 12, 2017. *See* Tr., dated June 12, 2017, at 133: 16-20.

[4] The Court is also unpersuaded by VES's argument that this claim is timely, because, "[n]ot knowing the reason for the VA's conduct, VES had nothing to protest before submission of proposals." VES Reply at 6. QTC's argument that this claim is timely, because the VA's statements were not "actionable before award," is similarly unavailing. QTC Reply at 23. Any concerns that plaintiffs had about the VA's questions were known to plaintiffs before final proposal revisions were due and should have been raised during the procurement process.

Because, plaintiffs do not dispute that they never challenged the VA's discussions regarding price before submitting their final proposal revisions, plaintiffs' challenge here is untimely.  *See Blue & Gold Fleet, L.P.*, 492 F.3d at 1315.

### 3.    VES Has Waived Its Challenge To The VA's Methodology For Evaluating Price Reasonableness

VES has similarly waived its claim that the VA's methodology for evaluating price reasonableness was improper.  VES Mot. at 20-25.  In this regard, VES argues that the VA's price reasonableness evaluation process was unreasonable, because the RFP requires the VA to consider base year, as well as all option year pricing, when evaluating price reasonableness and the VA only took base year pricing into consideration.  *Id.*  But, the record evidence shows that Amendment 8 to the RFP requires that the VA use a sample task order that only took into consideration base year pricing, to evaluate price reasonableness.  AR at 16213-37, 23168, 31799.

While VES is correct that the RFP includes language that states that the total proposed price of certain line items will be "added to the total proposed prices for all remaining line items to generate an overall total proposed price (including base and all option periods) for each Offeror," this language is contrary to other language contained in Amendment 8, which specifically requires that the VA use a sample task order that only takes into consideration base year pricing.  To the extent that the language that VES relies upon created a patent ambiguity in the RFP regarding the requirements for evaluating price reasonableness, VES should have raised this concern prior to the submission of final proposal revisions.  *Id.* at 16228, 18942.

Because VES did not do so, VES has waived this claim.  *See Blue & Gold Fleet, L.P.*, 492 F.3d at 1315.

### C.    Plaintiffs' Remaining Claims Are Unsubstantiated

### 1.    Plaintiffs' Claim That The VA's Awards To LHI And MSLA Violate The RFP, Or Constitute An Unmitigated OCI, Are Unsubstantiated

A plain reading of the RFP also shows that the RFP does not prohibit the VA from making same district contract awards to LHI and MSLA, as plaintiffs suggest.  AR at 16217-18, 18932.  In this regard, the RFP provides that the Veterans Benefits Administration "intends to award contracts to two vendors per District, including Districts 1-5, reserving the right to award

to a single vendor per District." *Id*. at 18932.  Section 12.2 of the RFP also provides, in relevant part, that:

> For any District in which two Contractors provide MDEs, 70% of the total examination request volume will be split equally between Contractor A and Contractor B throughout the period of performance . . . Fair Opportunity will be provided for each Contractor to receive all or part of the remaining 30% of the examination request volume.  Specifically, order placement procedures require that the 30% of additional examination requests shall be allocated between the Contractors based on a continuous, comparative evaluation of each Contractor's timeliness, quality, and capacity to handle the additional volume of work.

*Id*. at 18841.

It is undisputed by the parties that LHI and MSLA share the same corporate parent since the merger of these two companies in 2016.  *Id*. at 21175-76.  It is also undisputed by the parties that there is no provision in the RFP that prohibits, or even addresses, a same district award to such affiliated entities.  *See* Tr., dated June 12, 207, at 28: 14-19, 23-25; 87: 2-11.  Given this, the record evidence shows that the VA's decision to award contracts for the same district to LHI and MSLA did not violate the terms of the RFP.

The record evidence also shows that the VA appropriately investigated and mitigated any organizational conflict of interest ("OCI") that could arise from the corporate relationship between LHI and MSLA.  In this regard, the record evidence shows that the VA became aware of a potential OCI related to LHI and MSLA on March 17, 2016, prior to the first award of the contracts.  AR at 326, 16166, 21175-76.  The record evidence also shows that, during its OCI investigation, the contracting officer discussed the new corporate relationship between LHI and MSLA, sought advice from the VA's general counsel, and ultimately determined that the awards to LHI and MSLA met the VA's goal of ensuring that an adequate network of providers exists in each district to cover the anticipated high volume of work.  *Id*. at 21175-76.  The contracting officer's finding in this regard is also supported by the technical proposals of LHI and MSLA, which show that the two companies have distinct provider and IT networks.  *Id*. at 12384-85, 12400, 12971, 12946-75, 16166-67.  And so, the record evidence shows that the contracting officer reasonably concluded that a single district award to LHI and MSLA would meet the VA's goals and be in accordance with the terms of the RFP.  *Id*. at 21175-76.

VES's contention that the VA's pre-solicitation white paper supports its claim that the awards to LHI and MSLA are improper is also belied by the record evidence.  *Id.* at 14439-41; VES Reply at 23-25.  The subject white paper states, in relevant part, that:

> [During planning for the RFP, the Strategic Acquisition Center—Frederick] was instructed that the [Program Management Office] PMO would not accept anything less than two vendors per region with an incentive plan to promote reduced exam delivery times throughout the contract.  The PMO also stated it must have two vendors per region so the PMO could move work from one vendor to the other if needed due to poor performance or delivery times.

AR at 14439.  While the white paper does address the need for two vendors in each district for the subject contracts, the white paper does not prohibit awards in the same district to two companies that share a corporate parent.  *Id.* at 14439-41.  And so, the white paper has no bearing upon whether the VA's decision to award the subject contracts to LHI and MSLA was proper in this case.

Plaintiffs' argument that certain statements by MSLA and its parent company support their claim is similarly misguided.  QTC Mot. at 25-30; VES Mot. at 30-38.  Specifically, VES relies upon an email from MSLA's chief executive officer to the contracting officer that states, in relevant part, that: "[o]ver time and pending any real or perceived conflicts, [MSLA] would seek to enhance the services provided to veterans through the sharing of best practices with LHI and appropriate integration activities."  AR at 24976; VES Mot. at 37.  While this email clearly suggests that LHI and MSLA would "integrate their efforts and technology," the email also makes clear that such integration will be "as appropriate" and will be subject to "any real or perceived conflicts."  AR at 24975-76.  And so, the subject email does not demonstrate that LHI and MSLA will not have adequate resources to perform under the subject contracts due to the merger of these two companies.

In sum, the administrative record makes clear that the awards to LHI and MSLA neither violate the terms of the RFP, nor constitute an unmitigated OCI.  And so, the Court will not set aside the VA's decisions to award the subject contracts to LHI and MSLA.

### 2.   VES's Challenge To The VA's Trade-Off Analysis Is Without Merit

The record evidence also does not support VES's challenge to the VA's trade-off analysis in connection with this procurement.  It is well-established that this Court affords deference to

the VA's best value analysis.  *Galen Med. Assoc., Inc. v. U.S.*, 369 F.3d 1324, 1330 (Fed. Cir. 2004).  And so, the VA's best value determination here should not be disturbed, if the VA documents its analysis and includes a rationale for any business judgments and trade-offs made in reaching that decision.  *See Blackwater Lodge & Training Center, v. U.S.*, 86 Fed. Cl. 488, 514 (2009).

Here, the record evidence shows that the VA's best value analysis is well-documented and contains a rationale for the VA's best value decision.  Specifically, the record evidence shows that the VA conducted its best value analysis in two steps: (1) the VA made an initial assumption about the two apparent best value offerors for each district; and (2) the VA validated this assumption by comparing the two apparent best value offerors to all other competitive offerors.  AR at 31834.

The VA's best value determination process and outcome is also well-documented in the Addendum to the Post-Discussion Business Clearance Memorandum.  *Id.* at 31749-910.  This Addendum shows that the VA determined the two initial best value offerors for each district based upon an evaluation of the RFP's evaluation factors.  *Id.* at 31835-39, 31851-55, 31867-72, 31879-82, 31892-96.

In addition, the Addendum provides the rationale for the VA's trade-off decision.  The Addendum provides that, "[t]o determine the best value proposal(s) for each District, analysis begins with the Offeror(s) that the Contracting Officer believes to offer the best value, considering all evaluation factors and price."  *Id.* at 31834, 31867, 31878.  The Addendum further provides that:

> In assessing the relative strengths and weaknesses of the non-price factors, coupled with the relative value in price, the Contracting Officer makes an initial assumption that [the two initial best value offerors] offer the best value to the government [in the relevant districts and] that assumption is validated in the following two sections . . . which summarize the overall competitive strength of both [these Offerors] compared to the rest of the Offerors.

*Id.* at 31835, 31851, 31879, 31868, 31892.  And so, the administrative record shows that the VA's best value analysis is well-documented in the administrative record and that this analysis is based upon a sound agency rationale.

VES's argument that it has been somehow prejudiced by the VA's best value analysis is also unsupported by the record evidence.  VES Am. Compl. ¶¶ 117-18; *see also* VES Mot. at 39-40.  VES argues that it could have been awarded the subject contracts, but for the VA's alleged errors in conducting the trade-off analysis.  But, the administrative record shows that VES's offer was compared to the two initial best value offerors for each district in which VES actually competed for award.  AR at 31841-42, 31847-48, 31857-58, 31863-64, 31873-74, 31875-77, 31885-86, 31889-90, 31897-98, 31902-03.  The administrative record also shows that, based upon these comparisons, the VA determined that VES did not offer the best value to the government in any of those districts.  *Id.*  And so, the record evidence shows that the VA fully considered VES's proposal, in light of the best value offerors, and the agency reasonably concluded that VES did not offer the best value to the government.  *See Blackwater Lodge & Training Center*, 86 Fed. Cl. at 514.

### 3.     QTC's Claim That The VA Mislead QTC Regarding A Possible Bridge Contract Is Unsubstantiated

As a final matter, QTC's claim that the VA engaged in misleading discussions regarding a potential bridge contract is similarly unsubstantiated by the record evidence.  While the government does not dispute that the VA engaged in discussions with QTC about a potential bridge contract on August 30, 2016, the record evidence shows that the VA also told QTC—and other offerors—that offerors must still submit final proposal revisions by the established due date.  AR at 16153, 19059.  And so, the Court does not find—and QTC does not point to—any evidence in the administrative record to substantiate QTC's claim that the VA's discussions in this regard were misleading.

More importantly, even if the VA's discussions could be considered misleading, there is also no evidence in the administrative record to show that QTC has been prejudiced by this error.  Rather, QTC does nothing more than speculate about how a potential bridge contract would have impacted the price proposed in its final proposal revisions.  QTC Compl. ¶¶ 9, 91-94; *see also* QTC Mot. at 34-36.  And so, QTC simply has not substantiated this claim.

### D.     Injunctive Relief Is Unwarranted

Lastly, because plaintiffs have not succeeded upon the merits of their claims, neither plaintiff is entitled to the injunctive relief that it seeks in this matter.  In this action, QTC requests

that the Court direct the VA to conduct discussions and re-evaluate revised proposals, in accordance with the terms of RFP and applicable law.  QTC Compl. at Prayer for Relief.  VES similarly requests that the Court permanently enjoin the transition and performance of the contracts at issue and require the VA to reopen the competition.  VES Am. Compl. ¶ 124.  But, it is well-established that a plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for permanent injunctive relief.  *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief).  Because neither QTC nor VES have prevailed upon the merits of their claims here, plaintiffs are not entitled to the requested injunctive relief.

## V.    CONCLUSION

In sum, plaintiffs' bid protest claims in this matter are either untimely, or unsupported by the record evidence.  Indeed, the record evidence in this case shows that the VA's award decisions were reasonable and in accordance with the terms of the RFP and applicable law. While plaintiffs' disappointment with these award decisions is understandable, there is no evidentiary basis for the Court to step in and set aside the VA's award decisions.

In addition, QTC's efforts to supplement the extensive administrative record in this case with the declaration of Chelsea Taylor Cullum and related calculations is unwarranted, because these materials serve only to bolster QTC's litigation position.

And so, for all of the foregoing reasons, the Court:

1.  **DENIES** plaintiffs' motions for judgment upon the administrative record;

2.  **GRANTS** the government's consolidated cross-motion for judgment upon the administrative record;

3.  **GRANTS** the defendant- intervenors' motions for judgment upon the administrative record;

4.  **GRANTS** the government's motion to strike; and

5.  **DENIES**, as moot, plaintiffs' motions for clarification.

Judgment shall be entered accordingly.

Each party shall bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Orders entered in these matters on January 24, 2017.  This Memorandum Opinion and Order shall therefore be filed under seal. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Orders prior to publication.  The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **July 24, 2017**.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby_____
LYDIA KAY GRIGGSBY
Judge